UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANDRE A. JOHNSON,

Plaintiff,

-vs-

CORRECTIONAL SGT. J. FRAIZER, CORRECTIONAL OFFICER L. DiRIENZO and SAJ, Deputy Superintendent,

Defendants.

DECISION and ORDER

16-CV-6096 CJS

INTRODUCTION

Andre Johnson ("Plaintiff" or "Johnson"), a prison inmate in the custody of the New York State Department of Corrections and Community Services ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his federal constitutional rights by, *inter alia*, retaliating against him and violating his procedural due process rights. Now before the Court is Defendants' motion to dismiss the Amended Complaint, for failure to exhaust administrative remedies. The application is granted.

BACKGROUND

The operative pleading in this action is Plaintiff's Amended Complaint. Generally, the Amended Complaint alleges that, at Livingston Correctional Facility ("Livingston"), after Plaintiff filed complaints against defendant Corrections Sergeant Fraizer ("Fraizer"), Fraizer conspired with defendant Corrections Officer L. DiRienzo ("DiRienzo"), who filed false misbehavior reports against him; and that thereafter, defendant Deputy Superintendent Saj ("Saj") conducted a disciplinary hearing in which he violated Plaintiff's right to procedural due process. According to the pleading, Saj found Plaintiff guilty of the disciplinary infractions and sentenced him to period of confinement in the Special Housing Unit

(“SHU”).

The Amended Complaint contains certain allegations regarding Plaintiff’s attempts to exhaust his administrative remedies before commencing this action. In pertinent part, the pleading makes the following statements, which are listed in the order in which they appear:

> That because of the retaliatory actions of the Defendants the Plaintiff was also deprived of his rights to appeal the disposition of the Tier II hearing.
>
> ***
>
> That because of the Defendants retaliatory actions the Plaintiff has been harassed, threats made towards his life, has been subjected to unfair and impartial hearings[.]
>
> ***
>
> The Plaintiff has exhausted his administrative remedies before filing this claim, by filing formal complaints to the Governor of the State of New York, to the Acting Commissioner of D.O.C.C.S., to the Superintendent of Livingston Correctional Facility, as well as [the] Grievance Office of Livingston Correctional Facility, and the Internal Affairs bureau to no avail.

Amended Complaint. However, the amended pleading also indicates that the alleged constitutional violations occurred in mid- and late-January, 2016, and that Plaintiff commenced this action a mere three weeks later, on February 17, 2016.

As an aside, Plaintiff’s contention in the Amended Complaint, that he exhausted his administrative remedies before commencing this action, is at odds with his statements in the original Complaint. Specifically, in the original Complaint, which was filed less than a month prior to the Amended Complaint, and which was sworn to by Plaintiff under penalty of perjury, he stated that he neither grieved his claims, nor appealed any adverse decision concerning the grievance process. Further, in response to the question, on the form complaint that Plaintiff used to draft the original complaint, “If you did not exhaust your

administrative remedies, state why you did not do so," Plaintiff wrote, "N/A."[1]

On September 30, 2016, Defendants filed the subject motion to dismiss the Amended Complaint, for failure to exhaust administrative remedies. Defendants contend that the allegations in the Amended Complaint establish that Plaintiff failed to exhaust his administrative remedies before commencing this action. In that regard, Defendants point out that while Plaintiff claims that he took certain actions, such as sending complaints to the Governor of the State of New York, such actions do not amount to exhaustion under the PLRA:

> In the matter before the Court, the complaint states that Plaintiff did not file a grievance, appeal to the superintendent and then appeal to [the Central Office Review Committee] ["]CORC["], as he is required to do. Instead, Plaintiff claims to have simply written a letter to various different agencies, waited approximately ten days, and then filed suit. . . . He simply refused to wait for the relevant decisions to come down and appeal them; instead he attempted to file his grievance and appeals all at the same time.[2]

Defendants further contend that while the Amended Complaint alleges that Plaintiff was "deprived of his rights to appeal the disposition of the Tier II hearing," it "provides no further explanation."[3]

In opposition to Defendants' motion to dismiss, Plaintiff filed a response [#33], which makes the following arguments: 1) on January 29, 2016, Plaintiff "filed an appeal" of his convictions at the Tier III disciplinary hearing, but "said Appeal was not allowed to leave

---

[1] "A statement in a withdrawn complaint that is superseded by an amended complaint without the statement is no longer a conclusive judicial admission[, though] the factfinder may very well find that such a contradictory statement reduces the credibility of the witness[.]" *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 32 (2d Cir. 2002) overruled on other grounds by *Slayton v. Am. Exp. Co.*, 460 F.3d 215 (2d Cir. 2006).

[2] Def. Memo of Law [#30-1] at pp. 3-4.

[3] Def. Memo of Law [#30-1] at p. 1.

the Facility"; 2) the results of the tier disciplinary hearing could not be "grieved" through the IGP; 3) Plaintiff was not required to exhaust his administrative remedies because in this action he is seeking only money damages.

Because Plaintiff is a *pro se* inmate, the Court also takes judicial notice of the fact that the instant lawsuit is not the only one that he has filed in this Court concerning the events in this action.[4] For example, on June 20, 2016, Plaintiff filed an action, entitled "*Johnson v. Annucci, et al.*," 16-CV-6417 CJS, in which he refers to some of the same events about which he complains in this action. Particularly, in the Amended Complaint [#7] in that action, Plaintiff clarifies, somewhat, his cryptic statement, in the amended complaint, that he was "deprived" of the right to appeal, as well as the related statement, made in response to Defendants' motion to dismiss this action, that he attempted to appeal his disciplinary conviction, but the appeal was "not allowed to leave the facility":

> [O]n January 29, 2016, the Plaintiff submitted his appeal while being confined in S.H.U. at the Livingston Correctional Facility, by placing in the hands of the 11-to-7 officer on duty said appeal in a 'stamped envelope" addressed to the Office of the Director of the Special Housing/Inmate Disciplinary in Albany N.Y. Also, sending a copy of the appeal to the office of the Governor of the State of New York. The Defendants refused to allow any and all legal correspondence of the Plaintiff to leave the facility in an attempt to hid[e] the misconduct of Officials[.]

16-CV-6417, Docket No. [#7] at p. 5

PRINCIPLES OF LAW

At the outset, since Johnson is proceeding *pro se*, his papers "must be construed

[4] "In deciding a motion to dismiss a *pro se* complaint, it is appropriate to consider certain materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Davis v. Jackson*, Case No. 15-CV-5359 (KMK), 2016 WL 5720811 at *4 (S.D.N.Y. Sep. 30, 2016) (citation and internal quotation marks omitted).

liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted).

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires prison inmates to exhaust such administrative remedies "as are available" before commencing an action "with respect to prison conditions under [42 U.S.C. § ] 1983." "The PLRA requires proper exhaustion, which means using all steps that the prison grievance system holds out, and doing so properly (so that the prison grievance system addresses the issues on the merits. Untimely or otherwise procedurally defective administrative grievances or appeals fail to satisfy PLRA's exhaustion requirements." *Riles v. Buchanan*, --- Fed. Appx. --- , 2016 WL 4572321 at *1 (2d Cir. Sep. 1, 2016) (citations and internal quotation marks omitted).

However, the PLRA exhaustion requirement may be excused where administrative remedies are not "available," and there are at least three circumstances under which such remedies may be considered unavailable:

> First, an administrative remedy may be unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Second, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In other words, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. Third, an administrative remedy may be unavailable when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Williams v. Correction Officer Priatno*, 829 F.3d 118, 123–24 (2d Cir. 2016) (quoting *Ross v. Blake*, --- U.S. — , 136 S.Ct. 1850, 1859-1860 (2016); internal quotation marks omitted).

"Inmates must exhaust their administrative remedies even if they are seeking only

money damages that are not available in prison administrative proceedings." *Geer v. Chapman*, No. 915CV952GLSATB, 2016 WL 6091699, at *3 (N.D.N.Y. Sept. 26, 2016) (citing *Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004)), report and recommendation adopted, No. 915CV952GLSATB, 2016 WL 6090874 (N.D.N.Y. Oct. 18, 2016).

For retaliation claims, an New York State inmate must exhaust his administrative remedies by utilizing New York's three-tiered Inmate Grievance Program ("IGP") procedures:

> DOC[C]S' Inmate Grievance Program ("IGP") has a regular three-tiered process for adjudicating inmate complaints: (1) the prisoner files a grievance with the Inmate Grievance Resolution Committee ("IGRC"), (2) the prisoner may appeal an adverse decision by the IGRC to the superintendent of the facility, and (3) the prisoner then may appeal an adverse decision by the superintendent to the Central Officer Review Committee ("CORC").

*Quezada v. Ercole*, No. 09CIV2832DLC, 2011 WL 3251811, at *4 (S.D.N.Y. July 29, 2011) (citing *Espinal v. Goord*, 554 F.3d 216, 224 (2d Cir.2009)).

On the other hand, an inmate exhausts a procedural due process claim, arising from a prison disciplinary hearing, by completing the disciplinary administrative appeal process. *See, Davis v. Jackson*, 2016 WL 5720811 at * 7 (Noting that the filing of an administrative appeal from a disciplinary hearing is "the proper mode of exhaustion" for a procedural due process claim arising from the disciplinary hearing).

Where the inmate is asserting both retaliation claims and procedural due process claims, he must separately exhaust both types of claim, using the procedure appropriate to each type of claim. *See, Davis v. Jackson*, 2016 WL 5720811 at * 7 (Observing that filing an administrative appeal from an underlying disciplinary proceeding was "an

inappropriate means of exhaustion for Plaintiff's retaliation claims.") (collecting cases); *see also, Washington v. Chaboty*, No. 09 CIV. 9199 PGG, 2015 WL 1439348, at *7 (S.D.N.Y. Mar. 30, 2015) ("In certain circumstances, however, courts have deemed a disciplinary appeal inadequate to exhaust a claim under the PLRA. Inmate Grievance Program exhaustion has been required, for example, where an inmate alleges retaliation, including retaliation based on the filing of an allegedly false misbehavior report.") (citation omitted).

The PLRA's exhaustion requirement is an affirmative defense, not a jurisdictional requirement:

> The Second Circuit has made clear that, in this context, "administrative exhaustion is not a jurisdictional predicate," but rather, "an affirmative defense." *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004). Accordingly, "defendants bear the burden of proof[,] and prisoner plaintiffs need not plead exhaustion with particularity." *McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003)[.]

*France v. Cty. of Westchester*, No. 12-CV-5576 (KMK), 2016 WL 1270259, at *4 (S.D.N.Y. Mar. 30, 2016) (additional citations omitted). Consequently, as Defendants admit, dismissal under Rule 12 for failure to exhaust administrative remedies is only appropriate where such failure is "clear" from the face of the complaint. On this point, the Second Circuit recently stated:

> Failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement. Accordingly, inmates are not required to specially plead or demonstrate exhaustion in their complaints. However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement.

*Williams v. Correction Officer Priatno*, 829 F.3d at 122 (citations omitted).

DISCUSSION

Defendants contend that the action should be dismissed pursuant to Fed. R. Civ. P. 12, because it is evident from the face of Johnson's Amended Complaint [#17] that he failed to exhaust his administrative remedies before commencing this action. The Court agrees with Defendants that, to the extent that Plaintiff maintains that he did not need to exhaust his administrative remedies because he is seeking money damages in this action, his argument lacks merit. Similarly, Plaintiff's argument that his disciplinary conviction is a "non-*grievable* issue" is, while true, irrelevant; although such convictions cannot be "grieved" through the IGP, they can be, and must be, administratively exhausted through the appeals process, as discussed above. Additionally, Plaintiff obviously understood that fact, since he claims that he attempted to exhaust his procedural due process claim by appealing his disciplinary conviction.

The Court also tends to agree with Defendants' argument that, since Plaintiff filed this action a mere three weeks after the events at issue, it is probable that he simply skipped the grievance/appeal stage and came directly to Federal Court. Certainly, Plaintiff's original Complaint in this action tends to support such a view.

In opposition to Defendants' arguments, Plaintiff is essentially left with two contentions. First, he states that he attempted to mail an appeal of his disciplinary conviction, but unidentified persons prevented the envelope from leaving Livingston. Indeed, Plaintiff even more broadly states, "The Defendants refused to allow *any and all legal correspondence* of the Plaintiff to leave the facility in an attempt to hid[e] the misconduct of Officials[.]" (emphasis added). The Court liberally construes such statements to mean that the administrative appeals process was not "available" to Plaintiff,

because corrections staff "thwarted" his efforts. However, Plaintiff's contention on this point is not plausible, and therefore need not be accepted as true.[5] First and foremost, Plaintiff makes only a conclusory statement that his mailing was not allowed to leave the facility, without offering any explanation for why he believes that. Meanwhile, his contention that *all* of his legal mail was similarly purloined is belied by his admission that he was able to send other complaints about the matter to various New York State officials at around the same time. Plaintiff offers no explanation for why Livingston staff would prevent him from mailing that particular appeal, but allow him to mail out all his other complaints, including the original complaint in this action.

Lastly, Plaintiff claims that Livingston staff harassed him and threatened his life, after he filed other grievances. The Court liberally construes this statement as an argument that the IGP procedures were not "available" to him, due to threats from corrections staff. However, the Court does not find this allegation plausible. To begin with, the allegation itself is entirely conclusory, since it does not indicate who threatened him, when he was threatened, or how he was threatened. Moreover, the alleged threats clearly did not dissuade Plaintiff from making and sending a wide variety of other complaints about Livingston staff to New York State officials, including officials at Livingston. *See*, Amended Complaint ("The Plaintiff has exhausted his administrative remedies before filing this claim, by filing formal complaints to the Governor of the State of New York, to the Acting Commissioner of D.O.C.C.S., to the Superintendent of Livingston Correctional Facility, as

---

[5] In *Williams v. Priatno*, 829 F.3d at 124, n. 3, the Second Circuit explained why it found an SHU inmate's contention, that a corrections officer never filed his grievance, to be plausible. Here, there is no such supporting facts to make Johnson's contention plausible. Instead, there is evidence tending to refute his assertion.

well as [the] Grievance Office of Livingston Correctional Facility, and the Internal Affairs bureau to no avail."); *see also,, Riles v. Buchanan*, 2016 WL 4572321 at *3 ("Nor did DOC officials' alleged threats of retaliation interfere with his exhaustion efforts. . . . He was not deterred from exhausting; he simply did not exhaust in accordance with the procedures.").

For all of these reasons, the Court finds that it is clear, from the face of Plaintiff's Amended Complaint, that he failed to exhaust his administrative remedies before commencing this action, in violation of 42 U.S.C. § 1997e(a).

CONCLUSION

Defendants' motion to dismiss [#30] is granted, and this action is dismissed without prejudice. The Clerk of the Court is directed to close this action.

SO ORDERED.

Dated: Rochester, New York
December 1, 2016

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge